**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TERRI DEESER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09-3277-CV-W-GAF-SSA** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**ORDER**</u>

## I.    BACKGROUND

In May 2006, Plaintiff Terri Deeser filed a claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401, *et seq.*, and a claim for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act, 42 U.S.C. § 1381, *et seq.*  Plaintiff alleged she became disabled beginning on June 1, 2002, in both applications.  Both applications were denied after initial administrative consideration.  On March 20, 2008, an administrative law judge ("ALJ") held an evidentiary hearing in which Plaintiff appeared in person. Following that hearing, the ALJ found Plaintiff was not under a "disability" as defined in the Act at any time from June 1, 2002, through the date of the decision.

The ALJ determined Plaintiff had the severe impairments of asthmatic bronchitis, degenerative joint disease, a right knee impairment, carpal tunnel syndrome, diabetes mellitus, obesity, and depression with psychiatric features even though he found her subject complaints were not entirely credible.  The ALJ further found Plaintiff had the residual functional capacity to perform light work involving simple, repetitive, non-public tasks with several non-exertional limitations,

1

which would not preclude her from performing other work existing in significant numbers in the national economy.

On June 25, 2009, the Appeals Council of the Social Security Administration denied Plaintiff's request for further administrative review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

Plaintiff appeals the decision on four (4) bases: (1) the ALJ did not properly determine the severity of her impairments; (2) the ALJ failed to give appropriate weight to the treating physician's opinion; (3) the ALJ erred in deriving the residual functional capacity; and (4) the ALJ erred by relying upon inadequate vocational evidence.[1]

## II.    STANDARD

The standard of review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusion. *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008). Evidence that both supports and detracts from the Commissioner's decision should be considered, but an administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Finch*, 547 F.3d at 935 (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)). A reviewing court should disturb the ALJ's decision only if it falls outside the available "zone of choice"; a decision is not outside that zone of choice simply because the court may have reached a different conclusion had the

---

[1]Defendant addresses the ALJ's determination that Plaintiff's subjective complaints were not fully credible in his brief. Plaintiff did not contest this finding; therefore, it is not discussed further.

court been the fact-finder in the first instance.  *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citations omitted).  The Eighth Circuit has further noted that a court should "defer heavily to the findings and conclusions of the SSA."  *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).[2]

## III.  ANALYSIS

### A.  Severity of Plaintiff's Impairments

Although the ALJ found Plaintiff had the severe impairments of asthmatic bronchitis, degenerative joint disease, right knee impairment, carpal tunnel syndrome, diabetes mellitus, obesity, and depression with psychiatric features, Plaintiff argues the ALJ erred in concluding her schizoaffective disorder, right elbow impairment, and right shoulder impairment were not severe impairments.  An impairment is non-severe if it has "no more than a minimal effect" on a person's "physical or mental ability to do basic work activities."  *See* 20 C.F.R. §§ 404.1521(a), 416.921(a); Social Security Ruling ("SSR") 96-3p.  The regulations define "basic work activities" as those "abilities and aptitudes necessary to do most jobs" and include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, and mental capacities for understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6).  Slight abnormalities that do not significantly limit a basic work activity are considered not severe.  *See Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989).  The claimant has the burden of proving that her impairment or combination of impairments is severe.  *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  It is not particularly difficult to meet this standard, but the standard is not "toothless."  *Id.* at 708.

---

[2]Upon review of the record and the law, Defendant's position is found to be persuasive. Much of Defendant's brief is adopted without citation.

First, contrary to Plaintiff's assertion, the ALJ implicitly found Plaintiff's schizoaffective disorder was a severe impairment. The ALJ determined Plaintiff had the severe impairment of "depression with psychiatric features." Dr. Clonts, Plaintiff's treating physician, similarly diagnosed Plaintiff with "[d]epression with psychotic symptomatology." The ALJ explicitly considered Plaintiff's hallucination in formulating Plaintiff's residual functional capacity and limited her to a non-public work environment, in part, because of her hallucinations. During the hearing, the ALJ questioned Plaintiff about her hallucinations and noted her diagnosis of schizoaffective disorder. Considering all this information, the ALJ's use of the term "psychiatric features" was an obvious typographical error referring to psychotic features and included Plaintiff's hallucinations.

Second, substantial evidence supports the ALJ's determination that Plaintiff's right elbow and right shoulder impairments were not severe impairments. Plaintiff's treatment records show she had no significant problems with her right elbow or right shoulder from 2003 through 2007. After falling in April 2008, she reported moderate pain in her right elbow and right shoulder, almost six (6) years after she alleges disability onset. But, a physical examination and x-rays taken following this fall were normal. She was diagnosed with only a strain and prescribed anti-inflammatory medication and a muscle relaxer. By May 2008, Plaintiff had no complaints; her right shoulder and right elbow were improved, and her range of motion was better. This is substantial evidence that these impairments were slight abnormalities that did not significantly limit a basic work activity and, thus, were not severe. *Hudson*, 870 F.2d at 1395. *See also Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (holding an impairment cannot be considered disabling if it can be controlled by treatment or medication).

**B.    Weight Given to the Treating Physician's Opinion**

Plaintiff argues the ALJ erred by not giving Dr. Clonts' opinion controlling weight, or at a minimum deference, when denying Plaintiff's applications. A treating physician's opinion concerning an individual's limitations is entitled to substantial weight. *Richmond v. Shalala*, 23 F.3d 1441, 1444 (8th Cir. 1994). But such an opinion does not automatically control, because the record must be evaluated as a whole. *Wilson v. Apfel*, 172 F.3d 539, 542 (8th Cir. 1999). A treating physician's opinion is entitled to deference only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the case record. *Juczczyk*, 542 F.3d at 632; *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

Here, the ALJ properly rejected Dr. Clonts's opinions because they were inconsistent with his own treatment notes. *See id.* at 632-33 (finding substantial evidence supported the ALJ's decision to reject treating physician's opinion where it was inconsistent with the treating physician's own treatment notes). Dr. Clonts completed medical source statements regarding Plaintiff's physical limitations on May 25, 2008, and June 16, 2008. In his first statement, he concluded Plaintiff could lift 10 pounds frequently and 15 pounds occasionally; stand or walk continuously for 30 minutes and 3 hours total in an 8-hour workday; and sit continuously for 30 minutes and 4 hours total in an 8-hour workday. He also concluded Plaintiff could push or pull 25 pounds; could not balance, stoop, or crawl; and could occasionally kneel, crouch, reach, or handle. Finally, he stated Plaintiff needed to lie down or recline every 2 hours for 15 minutes.

In his second statement, Dr. Clonts offered largely the same opinion. He made the following adjustments to his conclusions from his first statement: (a) Plaintiff could sit for 45 minutes continuously and 5 hours total in an 8-hour workday; (b) Plaintiff could occasionally stoop; and (c) Plaintiff needed to lie down every 1 to 2 hours for 10 minutes.

Dr. Clonts made these medical source statements despite his own contradictory treatment notes. Plaintiff began treatment with Dr. Clonts in October 2005, when she reported Tylenol and ibuprofen helped her back pain. In 2006, Plaintiff reported chronic leg and back pain at an intensity level of 2 out of 10, but stated it no longer radiated to her left leg. At that time, Dr. Clonts observed Plaintiff ambulated without significant difficulties and had a normal gait, range of motion, and strength. During 2007, Plaintiff reported some problems with intermittent and dull back pain. But Plaintiff stated this pain decreased with medication. Her chief physical complaints that year were headaches and eye redness. In 2008, Dr. Clonts stated Plaintiff's unspecified backache and asthma were stable, her right shoulder and legs improved with medication, and wrist splints helped her carpal tunnel syndrome. Throughout 2008, he consistently observed Plaintiff had normal gait, posture, strength, and range of motion, and his treatment notes do not show he limited Plaintiff's activities or suggested any aggressive treatment for her pain. Because these treatment notes were inconsistent with his opinion, the ALJ had substantial evidence to reject Dr. Clonts's opinion as to her physical limitations. *Juczczyk*, 542 F.3d at 632-33.

The ALJ also had substantial evidence to reject Dr. Clonts's medical source statement regarding mental limitations. On June 16, 2008, Dr. Clonts completed a medical source statement concerning Plaintiff's mental limitations. In it, he concluded Plaintiff had marked limitations in her ability to understand and remember detailed instructions; in several areas of concentration, persistence, and pace; and in her ability to be aware of normal hazards.

Dr. Clonts primarily treated Plaintiff for physical ailments and only noted her reports of mental symptoms. In fact, Plaintiff was seeing a specialist, Dr. Olomon, for her reported schizoaffective disorder. Generally, more weight is given to the opinion of a specialist about medical issues related to his or her specialty area than to the opinion of a source who is not a specialist.

*Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5)). In any event, Dr. Clonts's treatment notes revealed no marked limitations in her mental functioning. He reported she was consistently alert and normal. And in 2008, when the medical source statement concerning Plaintiff's mental limitations was completed, she repeatedly denied experiencing hallucinations.

Dr. Clonts's opinions were also inconsistent with other substantial evidence of record. *See Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [a treating physician's] opinion."). Plaintiff's diagnostic testing did not indicate that she had extreme physical limitations[3] or limitations of her daily living activities.[4] Further, a doctor who treated her in 2006, Dr. Engelking, concluded she had normal ability to stand, walk, lift, and handle objects. Neither Dr. Clonts nor any other doctor restricted her activities by requiring her to lie down or recline during the day. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) ("[T]here is no medical evidence supporting [plaintiff's] claim that she needs to lie down during the day.")

Regardless, the ALJ's residual functional capacity finding shows he gave some credit to Dr. Clonts's opinion. *See Choate v. Barnhart*, 457 F.3d 865, 869-70 (8th Cir. 2006). The ALJ limited Plaintiff to light work with certain environmental limitations, which represents a significant restriction that accounts for her physical limitations. In fact, as discussed more thoroughly below,

_____

[3]*See Hacker*, 459 F.3d at 937 (holding that, to be entitled to controlling weight, treating physician's opinion must be supported by medically acceptable laboratory and diagnostic techniques).

[4]*See Owens v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2006) (finding ALJ properly rejected treating physician's opinion where claimant's activities of daily living did not reflect the limitations assessed by physician).

most of Dr. Clonts' opinion concerning Plaintiff's physical limitations is consistent with the ALJ's finding. Additionally, the ALJ accounted for Dr. Clonts's view that Plaintiff had moderate limitations in social functioning and marked limitations in remembering, understanding, and carrying out detailed instructions by limiting her to simple, repetitive tasks in a non-public environment.

## C.  Residual Functional Capacity

A residual functional capacity is the most a claimant can do despite the combined effect of all credible limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant has the burden to prove the residual functional capacity at step four of the sequential evaluation, and the ALJ determines it based on all relevant evidence. *Harris v. Barnhart*, 356 F.3d 926, 9230 (8th Cir. 2004). After considering the entire record and analyzing Plaintiff's credibility, the ALJ incorporated those impairments and restrictions he found credible into her residual functional capacity. The ALJ determined Plaintiff had the residual functional capacity to perform light work, as defined in the appropriate regulations,[5] except that she could not climb ladders, ropes, or scaffolds; could not perform fine fingering with her left upper extremity; and could not be exposed to heights, hazardous machinery, cold, dust, smoke, or fumes. The ALJ further limited her to non-public, simple, repetitive tasks.

This residual functional capacity finding is consistent with substantial medical evidence. Dr. Engelking concluded Plaintiff had normal ability to stand, walk, lift, and handle objects. Similarly, Dr. Sparks concluded that Plaintiff could frequently lift 10 pounds and occasionally lift 20 pounds; stand and walk for 6 hours; and sit for 6 hours. These opinions are consistent with the ALJ's finding that Plaintiff could perform light work. Plaintiff's physical examinations revealed the same. Most

---

[5]20 C.F.R. §§ 404.1567(b), 416.967(b)

of Dr. Clonts's opinion concerning Plaintiff's physical limitations is consistent with the ALJ's findings, and the ALJ's limitation of non-public, simple, repetitive tasks is consistent with Plaintiff's mental evaluations. Additionally, Plaintiff testified she could mentally function if she stayed out of stressful situations; this is consistent with a limitation of non-public, simple, repetitive work. Giving deference to the ALJ's credibility findings, the record contains substantial evidence to support the ALJ's residual functional capacity determination; this Court, therefore, may not reverse that determination. *Heino v. Astrue*, 578 F.3d 873, 878-78 (8th Cir. 2009).

Despite this substantial evidence, Plaintiff argues the ALJ did not include several limitations – specifically limitations on her ability to reach or handle – and failed to make a function-by-function finding of Plaintiff's abilities. The standard of review recognizes the difficulties faced by an ALJ in drafting a decision and, therefore, requires only that the decision be based upon substantial evidence on the record as a whole. *See Finch*, 547 F.3d 935. Here, after determining Plaintiff was not entirely credible and examining the record in its entirety, the ALJ did include limitations on her ability to reach or handle. As discussed above, this finding was based on substantial evidence as Plaintiff's right shoulder and right elbow improved with limited and brief treatment, and her carpal tunnel syndrome improved with the use of splints.

The ALJ did implicitly make a function-by function finding of Plaintiff's abilities. The ALJ cited the regulation defining light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ further limited Plaintiff's residual functional capacity by finding that she could not climb ladders, ropes, or scaffolds; could not perform fine fingering with her left upper extremity; could not be exposed to heights, hazardous machinery, cold, dust, smoke, or fumes; and should be limited to non-public, simple, repetitive tasks. These limitations demonstrate the ALJ did make a function-by-function finding regarding her ability to sit, stand, lift, and carry, as well as considerations concerning her mental limitations.

**D.     Vocational Evidence**

The ALJ presented a hypothetical question to the vocational expert that contained a residual functional capacity of light work with a need to alternate positions hourly and an inability to tolerate heights, ropes, ladders, cold, dust, and fumes. The hypothetical included additional limitations of simple, repetitive tasks in a non-public environment. The vocational expert responded that such a person could perform the light, unskilled work of inspector, assembler, and packager. The hypothetical question was proper because it reflected Plaintiff's testimony and included only those impairments and restrictions that the ALJ found credible. *See Guilliams*, 393 F.3d at 804 ("Discredited complaints . . . are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them."). Therefore, the vocational expert's testimony that Plaintiff could perform other work constitutes substantial evidence supporting the Commissioner's decision. *See Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008).

Plaintiff argues the vocational expert did not identify the numbers from the *Dictionary of Occupational Titles* ("*DOT*") that correspond with the occupations of inspector, assembler, and packager. As a result, Plaintiff claims the Commissioner failed to meet his burden to prove other work that Plaintiff could perform. The Commissioner has the burden to produce evidence of other work that a claimant could perform, which he has done here. *See Young v. Apfel*, 221 F.3d 1065,

10

1069 n.5 (8th Cir. 2000) (noting that at step five, the burden of production shifts to the Commissioner to produce evidence of other work that can be performed by a person with the claimant's residual functional capacity and vocational skills, but the ultimate burden of persuasion to prove disability remains with the claimant).

Regardless, Plaintiff does not contend that the vocational expert's testimony conflicts with the descriptions in the *DOT*. Nor does she cite any law that requires a vocational expert to identify the numbers in the *DOT* to support his testimony. On the contrary, an ALJ is only required to take notice of the *DOT* when determining if there are jobs suitable in the national economy for a claimant. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). The ALJ did that here, and the vocational expert's testimony is substantial evidence supporting the Commissioner's decision. *See Robson*, 526 F.3d at 393.

**WHEREFORE**, for the reasons stated herein, the Commissioner's decision is **AFFIRMED.**

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED:  July 19, 2010